Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| AMBA HOMES PR LLC, SR. MICHAEL AGREST<br><br>Recurrente<br><br>v.<br><br>JUNTA DE DIRECTORES Y CONSEJO DE TITULARES DEL CONDOMINIO EL QUIJOTE, LUIS MONTERO, ADMINISTRADOR<br><br>Recurrida | KLRA202400672 | Revisión administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: C-SAN-2024-0018843<br><br>Sobre: Ley Núm. 129 de 16 de agosto de 2020 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

Comparece AMBA Homes PR LLC y su representante designado, Sr. Michael Agrest, (en adelante, AMBA) y solicita que revoquemos la *Resolución* emitida el 27 de septiembre de 2024 y notificada el 7 de octubre de 2024, por el Departamento de Asuntos del Consumidor (por sus siglas, DACo). Mediante dicho dictamen, el DACo dispuso de manera sumaria el cierre y archivo de la querella instada por AMBA, por falta de jurisdicción.

La parte recurrida, Consejo de Titulares del Condominio El Quijote y su Junta de Directores (en Conjunto, El Quijote), presentó su *Alegato en Oposición de la parte recurrida.*

Evaluado el recurso, la oposición y los documentos que conforman el apéndice, a la luz del derecho aplicable, revocamos la resolución recurrida.

Número Identificador
SEN2025_____

**I.**

AMBA es titular del apartamento 801 del Condominio El Quijote, localizado en la Calle Cervantes en San Juan, Puerto Rico. El 6 de mayo de 2024, su representante designado, Sr. Michael Agrest, presentó ante el DACo una *querella* contra la Junta de Directores del Condominio El Quijote; su presidenta, la Sra. Marisol Pagán; el Consejo de Titulares de dicho condominio y su administrador, Sr. Luis Montero Pagán. Por medio de ésta, AMBA indicó que, desde el 31 de agosto de 2021, no se había celebrado una asamblea general para elegir a una nueva junta de directores y por ello, solicitó al DACo que ordenara la celebración de dicha asamblea.[1]

Ante una moción de desestimación[2] fundamentada en que la querella había sido presentada por quien no constaba como titular registral del mencionado apartamento 801, el 28 de junio de 2024 el Sr. Michael Agrest instó *Querella Enmendada.* En ésta, incluyó a AMBA como coquerellante y amplió sus alegaciones.[3] A tales efectos, adujo que, el presupuesto anual más reciente de El Quijote se había aprobado el 10 de septiembre de 2019; que El Quijote no había notificado la minuta de la asamblea del 31 de agosto de 2021; y que, desde esa última fecha y por tres años consecutivos, la Junta de Directores del condominio solamente tenía ocupados los cargos de presidente y tesorero. AMBA adujo que las anteriores actuaciones de El Quijote contravenían las disposiciones de la *Ley de Condominios de Puerto Rico,* Ley Núm. 129-2020, 31 LPRA secs. 1923 *et seq.* A su vez, informó que, el 31 de mayo de 2024, El Quijote había celebrado una Asamblea Extraordinaria en la que no se permitió la participación del Sr. Michael Agrest, a pesar de que

---

[1] Véase, *Formulario Presentación Querella Propiedad Horizontal,* Apéndice del recurso, págs. 1-3.
[2] *Íd.*, págs. 18-20.
[3] *Íd.*, págs. 9-14.

éste presentó una resolución corporativa que lo facultaba a intervenir en dicha asamblea como representante de AMBA. En dicha asamblea, se aprobó una derrama para el proyecto de reparación y pintura del edificio. En su querella, AMBA impugnó los acuerdos aprobados durante esa asamblea extraordinaria del 31 de mayo de 2024.

Poco después, el 12 de agosto de 2024, AMBA instó una *Segunda Querella Enmendada,* en la cual solicitó que también se anularan los acuerdos de otra asamblea extraordinaria, celebrada el 30 de julio de 2024, y en la que se aprobó una derrama para la compra e instalación de un generador *full power* en el condominio.[4]

El 17 de septiembre de 2024, El Quijote radicó una *Moción de Desestimación por falta de jurisdicción enmendada.*[5] Solicitó que se desestimara la querella sin perjuicio hasta tanto AMBA cumpliera con los requisitos que establece el Artículo 65 de la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1923j, y la Regla 25 del *Reglamento de Condominios*, Núm. 9386 de 6 de junio de 2022. Estos exigen que una querella para impugnar cualquier determinación, acción u omisión de la Junta de Directores o el Consejo de Titulares, se acompañe con una certificación de que no tiene ningún tipo de deuda con el Consejo de Titulares y copia de la escritura pública o documento fehaciente que acredite su titularidad. Específicamente, las citadas normas establecen que será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la alegada deuda. El Quijote manifestó que AMBA impugna las acciones del Consejo de Titulares del condominio, razón por la cual el incumplimiento con los requisitos de la ley o el reglamento facultaban a la agencia a disponer sumariamente el archivo de la querella presentada.

---

[4] *Íd.*, págs. 33-40.
[5] *Íd.*, págs. 60-64.

AMBA presentó su *Oposición a Moción de Desestimación por falta de jurisdicción enmendada*[6]*,* a la que adjuntó copia de la escritura de compraventa que acredita su titularidad sobre el apartamento 801 del Condominio El Quijote[7] y una certificación de deuda expedida por el condominio.  En cuanto a la certificación de deuda emitida por el administrador del mencionado condominio[8], explicó que el monto de $192.22 -equivalente a un mes de mantenimiento- se encontraba en disputa, puesto que el pago se realizó mediante un cheque que El Quijote alegó no haber recibido.  Respecto a la deuda de $2,254.98, indicó que ésta corresponde a la derrama aprobada en la asamblea del 30 de julio de 2024, objeto de impugnación en la querella.  Así pues, basado en que las deudas se encontraban en disputa, AMBA arguyó que el DACo debía aplicar la excepción al requisito de no deuda establecida en el Artículo 65 de la *Ley de Condominios de Puerto Rico* y el Reglamento Núm. 9386, para casos en que la impugnación sea para cuestionar la deuda que alegadamente se tiene y, consecuentemente, proseguir con el trámite del caso.

El 9 de octubre de 2024, El Quijote presentó *Moción Reiterando Desestimación por Falta de Jurisdicción.*[9]  En ésta reconoció que la derrama aprobada en la asamblea extraordinaria del 31 de mayo de 2024 se encontraba en disputa.  No obstante, en lo concerniente a la deuda de $192.22 por concepto de cuota de mantenimiento del apartamento 801, explicó que dicho balance corresponde a un mes que dejó al descubierto el titular anterior para finales del 2021 y que, de conformidad con el Artículo 60 de la *Ley de Condominios de Puerto Rico,* 31 LPRA sec. 1923e, AMBA era responsable de las cuotas de mantenimiento impagadas hasta el

---

[6] *Íd.*, págs. 76-78.
[7] Escritura Número 19 otorgada el 28 de mayo de 2024 ante el notario Cristian Bernaschina Bobadilla. *Íd.*, págs. 79-88.
[8] *Íd.,* pág. 89.
[9] *Íd.*, Anejo 8, págs. 91-94.

momento de la transmisión del inmueble. En este punto, El Quijote puntualizó que, en su querella, AMBA no impugnó la deuda que surge de la certificación emitida por el administrador del condominio, sino las actuaciones de la Junta de Directores de no haber convocado una asamblea ordinaria y los acuerdos aprobados por el Consejo de Titulares en las asambleas extraordinarias. Por tanto, insistió que AMBA venía obligado a cumplir con los requisitos que establece el Artículo 65 de la *Ley de Condominios de Puerto Rico* y el Reglamento, *supra,* a los fines de acompañar su querella con una certificación de que no tiene ningún tipo de deuda con el Consejo de Titulares. Al no haberlo hecho, insistió en que procedía disponer el archivo de la querella presentada. Finalmente, El Quijote solicitó que se le eximiera de presentar su alegación responsiva hasta tanto se resolviera el asunto jurisdiccional planteado.

El 27 de septiembre de 2024, notificada el 7 de octubre de 2024[10], DACO emitió la *Resolución*[11] objeto del presente recurso, basado en la facultad que le confiere el Reglamento de Procedimientos Adjudicativos del DACo, Núm. 8034 de 14 de junio de 2011, para la resolución sumaria de las controversias. De tal forma, expresó que la prueba del expediente era suficiente para determinar la inexistencia de controversias sustanciales de hechos y resolver el asunto de manera sumaria. Así, en la resolución, consignó los siguientes hechos incontrovertidos:

1. La parte querellante, Amba Homes PR, LLC, representado por Adrián Bosch es titular del apartamento 801 del Condominio El Quijote. Adquirió dicha propiedad mediante escritura diecinueve (19) sobre compraventa otorgada el veintiocho (28) de mayo de dos mil veinticuatro (2024), ante notario público Cristian Bernaschina Bobadilla.

---

[10] *Íd.,* Anejo 10, págs. 101-103.
[11] *Íd.,* Anejo 9, págs. 95-100.

2. El Condominio El Quijote se encuentra sometido al Régimen de Propiedad Horizontal mediante escritura pública.

3. El 21 de mayo de 2024, la parte querellante Amba Homes PR LLC, Mi[cha]el Agrest, presentó Querella ante este Departamento en la cual invoca la jurisdicción al amparo de la Ley de Condominios número 129 del 16 de agosto de 2020.

4. La parte querellante de epígrafe Amba Homes PR LLC; Michael Agrest, presentó querella requiriendo la intervención del DACO para impugnar la asamblea extraordinaria que se celebró en el mes de mayo de 2024, solicitó como remedio la celebración de una asamblea ordinaria.

5. Según surge del Registro de Titulares, el apartamento 801 pertenece a una persona jurídica, Amba Homes PR, LLC. La escritura de compraventa que se presentó el comprador lo fue A. Bosch International LLC, representado por Adrián Bosch.

6. La parte querellante presentó con la querella un estado de no deuda con fecha del 17 de septiembre de 2024, en el cual se reflejó una deuda de $192.22 dólares. Dicha deuda la parte querellante la aceptó, e indicó que dicho pago se realizó, por lo que al momento se encuentra en disputa. Los titulares deberán estar al día en sus cuotas de mantenimiento, pólizas o derramas como requisito contra actuaciones de la Junta de Directores.

7. El DACO tiene jurisdicción exclusiva para conocer y adjudicar acciones de impugnación que radiquen los titulares de un condominio contra los acuerdos, omisiones o actuaciones de la Junta de Directores o el Consejo de Titulares.[12]

A tenor con las anteriores determinaciones, el DACo concluyó que:

[A]l examinar las alegaciones presentadas, los documentos que constan en el expediente administrativo y el derecho aplicable entendemos que este Departamento, carece de jurisdicción para atender la presente controversia entre las partes de epígrafe, toda vez que la parte querellante mantiene una deuda de mantenimiento con el Condominio. Según la Regla 25: Requisitos para presentar la Querella (Reglamento de Condominios Número 938[6]), el [A]rtículo 65 de la Ley de Condominios del 16 de agosto de 2020, la parte querellante presentará una certificación de que no tiene ningún tipo de deuda con el Consejo de Titulares. Será excepción al requisito de no deuda cuando la impugnación sea para cuestionar la alegada deuda.

En resumen, DACo razonó que la querella impugnaba las actuaciones del Consejo de Titulares y no una alegada deuda, razón

---

[12] *Íd.*, a las págs. 95-96.

por la cual, al momento de presentar su reclamo, AMBA no podía tener una deuda con el Consejo de Titulares. La agencia dedujo que AMBA mantenía una deuda por concepto de cuota de mantenimiento sobre su apartamento. En consecuencia, y a tenor con lo dispuesto en la *Ley de Condominios y* el Reglamento Núm. 9386, el DACo ordenó el cierre y archivo de la querella.

En desacuerdo, AMBA presentó una oportuna moción de reconsideración[13] que fue denegada de plano.

Inconforme, el 5 de diciembre de 2024, AMBA presentó el *Recurso de Revisión Judicial sobre Resolución Administrativa* que nos ocupa e imputó el siguiente señalamiento de error:

> Erró el Departamento de Asuntos del Consumidor al desestimar la Querella por falta de jurisdicción por alegadamente haber una deuda por concepto de mantenimiento a la fecha de la presentación de la Querella

En síntesis, AMBA aduce que los pagos en concepto de la cuota de mantenimiento han sido debitados automáticamente de la cuenta de banco perteneciente al Sr. Michael Agrest y que, a pesar de que la certificación de deuda expedida por el Condominio refleje que existe un gravamen por dicho concepto, éste en realidad no existe. Es decir, sostiene que existe una controversia real de hechos en cuanto a la certificación de deuda presentada por El Quijote que impedía la adjudicación sumaria del caso. Para sustentar sus alegaciones, AMBA incluyó en el apéndice de su recurso los documentos que anejó a la moción de reconsideración no atendida por la agencia.

El 7 de enero de 2025, El Quijote presentó su *Alegato en oposición de la parte recurrida.* En dicho escrito, El Quijote admitió que en los libros del condominio aparece una deuda equivalente a un mes de cuota de mantenimiento que AMBA asegura haber

---

[13] *Íd.*, Anejo 11, págs. 104-109.

pagado, pero el condominio alega no haber recibido, razón por la cual el pago se encuentra en disputa.[14] Aun así, razona que ello en nada afecta la determinación del DACo de desestimar la querella a tenor con el citado Artículo 65 de la *Ley de Condominios de Puerto Rico*, ya que el reclamo de AMBA ante el DACo no trataba de la impugnación de la cuota de mantenimiento que se le cobraba, sino de las acciones de no haber convocado una asamblea y los acuerdos aprobados por los titulares. Así que, obrando la certificación de la deuda que mantenía AMBA con el condominio, no surgía controversia sobre algún hecho material del caso y, por tanto, como cuestión de derecho, procedía la desestimación sumaria de la querella a tenor con lo dispuesto en el Artículo 65.

Con el beneficio de las comparecencias, resolvemos.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla. *Transp. Sonell, LLC v. Jta. Subastas ACT,* 214 DPR ___ (2024), 2024 TSPR 82; *Batista, Nobbe*

---

[14] *Alegato en Oposición de la Parte Recurrida,* págs. 12-13.

*v. Jta. Directores*, 185 DPR 206, 215 (2012).  Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad.  *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).  Véase, además, Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.  Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".  *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.  *Otero v. Toyota*, supra, pág. 728.  En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.  *Íd.*

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos.  Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.  Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia".  *Otero v. Toyota*, supra, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la

prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

**B.**

El Art. 2 de la *Ley de Condominios de Puerto Rico* (en adelante, Ley de Condominios), Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921a, establece que, la ley se aprobó con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal. La Ley de Condominios, *supra*, provee mecanismos para los conflictos inevitables que surgen del modus vivendi bajo un régimen de propiedad horizontal. *Srio. D.A.C.O.* v. *J. Condóminos C. Martí,* 121 DPR 807, 814 (1988). Asimismo, otro propósito que tiene la ley es la creación de un marco organizacional de un gobierno interno y canalizar los problemas de la vida comunitaria. *Íd.,* pág. 815. La ley detalla el marco organizacional del gobierno interno, cuyo organismo rector y

deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. *Íd.*

De otra parte, la Junta de Directores es el órgano ejecutivo que dirige (o la persona, en caso del Director), y supervisa la gestión administrativa del edificio de acuerdo a las directrices contenidas en la escritura, en el Reglamento y en los acuerdos del Consejo de Titulares. M. Godreau y M. Hernández Gutiérrez, *El Condominio*: *El Régimen de Propiedad*, 3era ed. rev., San Juan, Ed. Situm, 2023, pág. 235. La responsabilidad fundamental de la Junta de Directores es velar por el buen funcionamiento de los condominios logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares. *Consejo de Titulares* v. *Gómez Estremera et al.*, 184 DPR 407, 418 (2012).

De haber alguna acción contraria u omisión por parte de la Junta de Directores, el Art. 65 de la Ley de Condominios, 31 LPRA 1923j, establece, en lo pertinente, que:

> El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares **tendrá que demostrar que no tiene ningún tipo de deuda** con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. (Énfasis suplido).

La Ley de Condominios, *supra*, le encomendó a DACo la rápida adjudicación de reclamos de los condómines relativos a la administración del edificio. *Consejo de Titulares* v. *Gómez Estremera et al.*, supra, pág. 420. Se puede presentar ante DACo, las acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que

comprendan por lo menos un apartamento destinado a vivienda. *Amil v. J. Dir. Cond. Pumarada,* 156 DPR 495, 500 (2002). No obstante, el titular del inmueble puede acudir ante DACO conforme a lo expresado en la Regla 23 del Reglamento de Condominios, Reglamento Núm. 9386 del 6 de junio de 2022, la cual indica que:

> I. Las acciones u omisiones de la Junta de Directores, Administrador Interino, Agente Administrador, Síndico, así como los acuerdos del Consejo de Titulares podrán ser impugnados ante el [DACO] por los titulares en los siguientes supuestos:
>
> (a) Cuando sean contrarios a la Ley de Condominios de Puerto Rico, la escritura matriz, el reglamento del condominio y a este Reglamento.
>
> (b) Cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular.
>
> (c) Cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
>
> El Agente Administrador será responsable por cualquier determinación, actuación u omisión del Asistente Administrador.
>
> II. El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. Igualmente quedarán excluidas de la jurisdicción del DACO, las querellas entre titulares o cuando el Consejo de Titulares, el Director o la Junta de Directores presente una reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia.

Para poder instar una querella se debe cumplir con la Regla 25 del Reglamento de Condominios, *supra*, la cual expresa que:

> I. Las querellas que se presenten ante este Departamento deberán cumplir con los criterios del Reglamento de Procedimientos Adjudicativos vigente.
>
> II. El titular o grupo de titulares que interese impugnar cualquier determinación, acción u omisión por parte de la Junta de Directores, Administrador Interino, Agente Administrador, Sindico o un acuerdo del Consejo de Titulares como parte de su querella deberá incluir la siguiente información:

(1) Nombre, dirección física y postal, correo electrónico y números de teléfono del titular o titulares reclamantes.

(2) Nombre, dirección física y postal, correo electrónico y números de teléfono del querellado.

(3) Una relación clara, breve y concisa de todos los hechos y las alegaciones que dan base a la querella.

(4) Si el condominio cuenta con un Director o una Junta de Directores, el nombre de dicho Director o del presidente de la Junta de Directores.

(5) Si la querella se presenta en contra del Director o de algún miembro de la Junta de Directores, expresará el nombre, dirección física y postal, números de teléfonos y su designación en la querella será como co-querellado, siendo el Consejo de Titulares el otro co-querellado.

(6) **Certificación de que no tiene ningún tipo de deuda con el Consejo de Titulares. Sera excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la alegada deuda.**

(7) Escritura pública o copia del documento fehaciente que acredite su titularidad.

(8) Cuando en la querella se impugne la inacción del Director o de la Junta de Directores de proteger la fachada del condominio, el titular o grupo de titulares deberá proveer el nombre y dirección física y postal de los titulares afectados que han alterado los rasgos estéticos y arquitectónicos del inmueble, según consta en el Registro de Titulares.

(9) Copia de la correspondencia cursada entre las partes sobre la controversia reclamada, si alguna.

(10) Si el titular es un ente jurídico, deberá incluir resolución corporativa autorizando y designando a un representante. (Énfasis suplido).

La Regla 27 del mencionado Reglamento provee para las adjudicaciones sumarias de querellas al instruir que "[e]l incumplimiento por parte del titular o grupo de titulares de cualquiera de los requisitos establecidos en la Ley o este Reglamento, facultarán al [DACo] a disponer sumariamente el archivo de la querella presentada".

### C.

El *Reglamento de Procedimientos Adjudicativos* del DACo, Núm. 8034 de 14 de junio de 2011, cuyo título explica por sí mismo su propósito, dispone en su Regla 11 que:

El departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso,

**si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes**. (Énfasis suplido).

### III.

AMBA alega que el DACo erró al desestimar sumariamente su querella por falta de jurisdicción fundamentado en que existe una deuda por concepto de mantenimiento a la fecha de la presentación de la querella. Aduce que los pagos en concepto de la cuota de mantenimiento han sido debitados automáticamente de la cuenta de banco perteneciente al Sr. Michael Agrest y que, a pesar de que la certificación de deuda expedida por el Condominio refleje que existe un gravamen por dicho concepto, éste en realidad no existe. Es decir, sostiene que existe una controversia real de hechos en cuanto a la certificación de deuda presentada por El Quijote que impedía la adjudicación sumaria del caso. Para sustentar sus alegaciones, AMBA incluyó en el apéndice de su recurso los documentos que anejó a la moción de reconsideración no atendida por la agencia. De igual forma, El Quijote ha admitido "que en los libros del condominio aparece una deuda equivalente a un mes de cuota de mantenimiento que [AMBA] entiende que realizó, pero el condominio alega que no lo ha recibido y que el mismo está en disputa".[15]

Como se ha mencionado, debido a que una determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. De los documentos del expediente surge que AMBA demostró la existencia de una controversia real en cuanto a la realización del pago de la cuota de mantenimiento y/o su recibo por parte del condominio.

---

[15] *Alegato en Oposición de la Parte Recurrida,* págs. 12-13.

Así, AMBA cumplió con su deber de rebatir la presunción de corrección de la decisión recurrida y estableció, con evidencia, que las determinaciones de hechos de la agencia no están basadas en el expediente y, a su vez, que las conclusiones a las que llegó el DACo son irrazonables. Consecuentemente, el foro administrativo estaba impedido de colegir que no existía controversia de hechos y adjudicar la querella por la vía sumaria.

En fin, concluimos que la determinación recurrida fue impugnada acorde con el derecho aplicable, por lo que procede revocar la resolución sumaria dictada por el DACo. Se ordena a dicha agencia celebrar una vista para dilucidar si AMBA pagó o no la alegada deuda por concepto de cuota de mantenimiento y, del resultado de tal determinación, dirimir si tiene jurisdicción para atender la querella presentada.

## IV.

Por los fundamentos que anteceden, se revoca la *Resolución* recurrida y se devuelve el caso para la continuación de los procedimientos, conforme a lo aquí resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones